**Dauchy Iron Works, Defendant in Error, v. S. H. Gunder, Plaintiff in Error.**

**Gen. No. 14,432.**

1. CORPORATIONS—*power to hold real estate and lease portions thereof.* In the absence of a showing of lack of good faith upon the part of a corporation, a corporation may acquire real estate and use so much thereof as may be then necessary for its corporate purposes, retaining the balance to take care of future requirements of its business, and until such balance is not required it may lease the same and collect the rent accruing from such leasing.

2. PLEADING—*when recovery may be had under common counts.* Rent accruing under a sealed lease even though the premises were not occupied by the lessee during the period for which the rent is claimed, may be recovered under the common counts if there has been full performance by the lessor.

Assumpsit. Error to the Municipal Court of Chicago; the Hon.

JOHN H. HUME, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed October 25, 1909.

**Statement by the Court.** This is a suit to recover rent upon a written lease made by the plaintiff, defendant in error here, in favor of the defendant, now plaintiff in error. The declaration is in *assumpsit,* consisting of the common counts, to which the defendant pleaded non-assumpsit and filed a special plea of *ultra vires.*

The plaintiff, Dauchy Iron Works, is a corporation organized in 1888 under the general incorporation Act of this State, "for the manufacture and sale of sidewalk, vault and area lights, and other iron manufacture and foundry work." The corporation in the same year purchased real estate consisting of two lots or pieces of land adjoining each other fronting on Illinois street, Chicago, comprising in all a frontage of about one hundred and twelve feet with a depth of about one hundred feet. The same year it erected on one portion of this land a four-story building having a depth of thirty feet, the basement of which was used as part of a foundry which was also erected on said lot behind said building, covering a space of about sixty-two by seventy feet. About two years later the corporation erected a second building on the other portion of its land so purchased, said building being six stories in height by about one hundred feet in depth, covering thus substantially the whole of that lot or piece of ground. It also placed two additional stories on the original building, making that also a six story building. The corporation made use of the first four floors of the first building in connection with its manufacturing business, and also the basement of the new or second building. The remaining space in the two buildings, namely, the second, third, fourth, fifth and sixth stories of the new building and the two stories added to the first building were rented. Later the corporation made use of in its own business and ceased to rent a part and subsequently the whole of the second floor of the

new building, and continued to rent the remaining stories, six in all, of the two buildings. The defendant subsequently became a tenant of the corporation, leasing in 1902 the whole of the fourth floor of the second or new building known as 90 to 92 Illinois street, and in 1904 the rear portion of the fifth floor of said building, the terms of both leases expiring April 30, 1907. In March, 1906, the defendant vacated the premises, and this suit is brought to recover the balance of rent alleged to be due under the leases from the time of such vacation to the end of the term.

The trial court entered judgment in favor of the plaintiff for the amount of rent found to be due under the leases. From that judgment this writ of error is prosecuted.

FERGUSON & GOODNOW, for plaintiff in error.

STUART G. SHEPARD, for defendant in error.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The defendant complains first, that the trial court erred in not sustaining the plea of *ultra vires;* and the contention that the plaintiff, a corporation, had no authority, express or implied, under its charter to execute the leases in question, is argued elaborately and at length. The argument is in substance that the charter of a corporation is the measure of its powers; that under the plaintiff's charter it has no power, express or implied, to hold real estate beyond what may be necessary for the transaction of its business as set forth in section 5 of the Corporation Act; that the leases in question are *ultra vires* and void, and that they cannot be made valid by lapse of time or ratification by the parties. We deem it unnecessary to follow counsel for defendant in his elaborate discussion of the powers of corporations. The question now involved has been several times under consideration in this and the Supreme Court and must be determined in view

of those cases. If we assume for the purpose of the argument that defendant is not estopped from interposing a plea of *ultra vires* and that such plea is technically sufficient (see C. O. B. of T. v. Imperial Bldg. Co., 136 Ill. App. 606-613, and cases there cited), the substantial question is whether the plaintiff corporation has authority under its charter to lease and collect rent for any unused portion of its premises, the major part of which is necessarily used for the transaction of its business.

In section 5 of the Corporation Act (chap. 32 R. S.) it is provided that "Corporations formed under this Act * * * may own, possess and enjoy so much real and personal estate as shall be necessary for the transaction of their business and may sell and dispose of the same when not required for the uses of the corporation." It is not disputed that the plaintiff corporation was and is incorporated under that Act for a lawful business purpose. The charter, as we said in C. O. B. of T. v. Imperial Building Co., 136 Ill. App. 606-611, "consists of the articles of incorporation in connection with the law under which the corporation is organized." It was authorized therefore to acquire, "own, possess and enjoy so much real and personal estate as shall be necessary for the transaction of its business." It is conceded that the portion of the premises in actual use for its foundry and manufacturing business covers substantially the entire ground space which it so owns, and that it uses also for the transaction of its said business all floors of the two six-story buildings erected on such ground except the four upper floors of one and the two upper floors of the other building. It is clear therefore that so far as the land itself is concerned the corporation is using it all for the transaction of its business, and is renting only such upper floors of the buildings it has erected on said land as it has for the time being no occasion to use for its own manufacturing business. There is evidence tending to show that the demands of the corporation's business upon its extra floor space have

steadily increased so that out of a floor space in both buildings of 41,365 square feet, of which when erected the corporation used for its own business only about 12,490 square feet, it was using in 1907 about 16,990 square feet including the lower floors, presumably most available for its business purposes. There is no evidence tending to show that the erection of the buildings in question was not in good faith. In The People v. Pullman Palace Car Co., 175 Ill. 125-138, which company is a corporation, the charter of which authorized it to purchase, acquire and hold such real estate as may be necessary for the successful prosecution of its business, it was contended that the corporation had erected in Chicago a much larger building than its business required, and the court said (p. 139): "It would be but a narrow and wholly unjustifiable view of this power to insist that in planning and constructing this building the corporation should leave out of consideration its probable prospective requirements and should erect a building containing only as many rooms and offices as its present business might demand. The corporation had the right as we think to look to and prepare for the future. It was but true economy to do so, and if it proceeded in good faith * * * no reason is perceived why it should be deemed bound by law to permit such parts of the building as are not for the present required for the accommodation of its business to remain vacant, but on the contrary that it might lawfully obtain such income from the rents of such rooms as might be possible until the growth or increase of its business demanded the additional rooms or offices." We discover no ground upon which this reasoning and conclusion are not equally applicable in the case at bar. In Rector v. Hartford Deposit Co., 190 Ill. 380-385, a contention substantially the same as that urged in the present case was considered, that the obligations of the lease were beyond the scope of the corporate powers of the corporation and for that reason void, and the position of the appellant was said to be "that the appellee corporation has flagrantly

abused its general power to acquire real estate and construct a building thereon." In that case the gross rental of the building fourteen stories high was $100,000 and the earnings from the safety deposit vaults, which by its charter the corporation was authorized to "erect and operate," did not exceed $100 a year. It was held that it being within the general scope of the express powers of the corporation to erect a building necessary for its proper corporate purposes, it should not be necessarily restricted to a building containing the precise number of rooms its then business might require, "provided of course such course should be taken in good faith and not as a mere evasion of the public law and policy of the State relative to the ownership of real estate by corporations. In such state of case the question is whether the corporation has abused or excessively and unjustifiably used the power and authority granted it." And it was held that such question—the defense of *ultra vires*—could not be maintained in "defense in a proceeding wholly collateral to the question of the right and power of the corporation in the premises." This would seem to be conclusive against the contention of the defendant in the case at bar. But if such defense could be maintained collaterally in the present case, we discover no sufficient evidence of any such abuse of the plaintiff's corporate powers or lack of good faith as would justify defendant's contention that the leases are void.

It is further contended that motions made to find the issues in behalf of the defendant on the ground of alleged variance between the testimony and declaration and alleged want of sufficient allegations in the declaration were erroneously denied. The declaration consists only of the common counts in *assumpsit,* to which defendant pleaded the general issue and *ultra vires*. It is urged that there is no averment in the declaration for use and occupation, which it is said is the "appropriate common count between landlord and tenant." It is conceded that the defendant did not

occupy the premises during the time for which rent is demanded, and it is argued that the plaintiff should have declared specially on the leases in question and cannot recover on the ordinary common counts. We are of opinion, however, that what is said in Rubens v. Hill, 213 Ill. 523-566, is applicable in the case at bar and must be deemed conclusive, that "where there has been full performance and nothing remains to be done but the payment of the money, or where there has been only part performance and the remainder has been waived or prevented," recovery may be had under the common counts upon a written contract though it be under seal. We think the leases were properly admissible in evidence under the pleadings.

It is said that the plaintiff waived its rights under the lease by asking more rent from prospective tenants. We do not so read the evidence. It appears that plaintiff actively endeavored to rent the premises as soon as the defendant vacated them. The ruling of the trial court in this regard gave to the defendant the benefit of such use of the premises by a prospective tenant for storing some of his goods for a month before the tenant's occupancy of the premises began. The defendant cannot complain if the landlord obtained more rent than the lease called for, the benefit of which accrued to the former. We find no abuse of discretion in the refusal of the trial court to allow additional pleas of *ultra vires* to be filed under all the circumstances.

Even if we agree with the defendant's contention that there is some error in the record, it nevertheless appears we think that the judgment does substantial justice between the parties, and it must be affirmed.

*Affirmed.*